# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

AT&T SERVICES, INC.,

                Plaintiff,

    v.

KEN B. PETERSON, Commissioner,
Department of Labor and Industry,
State of Minnesota, in his official
capacity, JOHN AIKEN, Interim
Director Labor Standards, State of
Minnesota, in his official capacity,
TAMMY L. PUST, Chief Judge,
Minnesota Office of Administrative
Hearings, in her official capacity, and
LORI SWANSON, Attorney General,
State of Minnesota, in her official
capacity,

                Defendants.

**MEMORANDUM OF LAW**

**AND ORDER**

Case No. 14-CV-4874 (MJD/JSM)

---

Douglas R. Christensen, Shirley O. Lerner and Jessica J. Schroeder, Littler
Mendelson P.C., Counsel for Plaintiff.

Jonathan D. Moler, Assistant Attorney General, Counsel for Defendants Ken B.
Peterson and John Aiken.

    This matter is before the Court on cross motions for summary judgment.

## I.    BACKGROUND

### A.    Factual Background

1.     **The Parties**

Plaintiff AT&T Services, Inc.'s ("AT&T") is, and at all material times was, a

corporation organized under the laws of the State of Delaware, with its principal

place of business in the state of Texas.  (Compl. ¶ 3 [Docket No. 1].)  It has, at all

material times, had facilities located and employed individuals in the State of

Minnesota.  (Id.)  It is an employer engaged in commerce and in an industry

affecting commerce as defined in 29 U.S.C. §§ 142(1) and (3) and 29 U.S.C. §§

152(2), (6), and (7) within the meaning of Section 301 of the Labor Management

Relations Act ("LMRA"), 29 U.S.C. § 185 ("Section 301").  (Id. ¶ 4.)

Defendant Ken B. Peterson is the Commissioner of the Minnesota

Department of Labor and Industry ("DOLI") and John Aiken is the Interim

Director of the Labor Standards of DOLI.  (Compl. ¶ 9.)  DOLI interprets and

enforces several Minnesota statutes including Minnesota Statute § 181.9413 (the

"Act").  (Id.)  DOLI investigates complaints filed with DOLI alleging violations of

the Act, and the Commissioner of DOLI may issue an order requiring an

employer to comply with the Act.  (Id.)  An employer who wishes to contest such

an order must file written notice of objection to the order with the Commissioner

of DOLI.  (Id.)  Upon receiving such an objection, DOLI must initiate a contested

case proceeding before an Administrative Law Judge from the Office of

Administrative Hearings ("OAH"), who adjudicates the matter and has the

authority to issue final and enforceable orders against employers who are found

to be in violation of the Act.  (Id.)

### 2.    The Collective Bargaining Agreement

AT&T and some of its affiliated entities have entered into collective

bargaining agreements with the Communications Workers of America ("Union")

covering certain AT&T employees in Minnesota and other parts of the country.

(Declaration of Lori J. Smith Submitted in Support of AT&T's Motion for A

Preliminary Injunction and Motion for Summary Judgment and Permanent

Injunction ("Smith Decl.")  ¶ 2 [Docket No. 15].)  The Union is recognized as the

sole and exclusive bargaining representative of such employees.  (Id.)  It is a

labor organization within the meaning of section 2(5) of the National Labor

Relations Act ("NLRA"), 29 U.S.C. § 152(5), and a labor organization

representing employees in an industry affecting commerce within the meaning

of Section 301.  (Id.)

AT&T and the Union were parties to a collective bargaining agreement that commenced on April 8, 2012, and expired on April 11, 2015 ("CBA"). (Compl. Ex. A (CBA).)

### i.   Unlimited Paid Personal Illness Benefit

The CBA provided benefits to covered employees for absences due to their personal illness.  Employees with twenty-five (25) or more years of service received unlimited paid personal illness benefits as follows:

Personal Illness

(a) Payment for full or partial days scheduled in a normal work week but not worked due to personal illness during the first seven (7) consecutive days will be paid on the following basis:
. . .

> (5) During each calendar year beginning with the calendar year in which a term of employment of twenty-five (25) years of service or more is completed—pay from and including the first full or partial day scheduled of work not worked due to a personal illness.

(CBA, art. 20, § 2(a) (5).)  AT&T estimates that it has approximately one hundred employees in Minnesota who were eligible for this benefit.  (Smith Decl. ¶ 7.)

Under the collective bargaining agreement in effect from May 10, 1998 through May 11, 2002, AT&T (through its predecessor in interest) provided this benefit to all employees, regardless of tenure.  (Id. ¶ 6.)

4

## ii.    Dispute Resolution Procedure

The CBA contains the following procedure for resolving disputes between

AT&T and the Union:

> ARTICLE 9 - GRIEVANCE PROCEDURE
> The Company and the Union recognize and confirm that the
> grievance procedures set forth in Article 9, and, where applicable,
> Article 10 (Arbitration) and Article 11 (Mediation), provide the
> mutually agreed upon and exclusive forums for resolution and
> settlement of employee disputes during the term of this Agreement.
> A grievance is a complaint involving the interpretation or
> application of any of the provisions of this Agreement, or a
> complaint that an employee(s) has in any manner been unfairly
> treated. . . .

(CBA, art. 9.)  Article 9 sets forth a three-step grievance procedure.  (Id.)  If the

parties cannot resolve a dispute through the procedures set forth in Article 9,

they may submit the dispute to arbitration.  (CBA, art. 10.)

## 3.    Minnesota Statute § 181.9413

Minnesota law provides, in relevant part:

181.9413 SICK LEAVE BENEFITS; CARE OF RELATIVES.

(a)  An employee may use personal sick leave benefits provided by
the employer for absences due to an illness of or injury to the
employee's child, as defined in section 181.940, subdivision 4, adult
child, spouse, sibling, parent, mother-in-law, father-in-law,
grandchild, grandparent, or stepparent, for reasonable periods of
time as the employee's attendance may be necessary, on the same
terms upon which the employee is able to use sick leave benefits for
the employee's own illness or injury. This section applies only to

> personal sick leave benefits payable to the employee from the
> employer's general assets.

Minn. Stat. § 181.9413 (emphasis added). "Personal sick leave benefits" are

defined as "time accrued and available to an employee to be used as a result of

absence from work due to personal illness or injury, but does not include short-

term or long-term disability or other salary continuation benefits."  Minn. Stat. §

181.9413(d).  In essence, "[t]he statute does nothing more than permit employees

to use their employer-provided sick benefits to care for a sick child." Schmittou

v. Wal-Mart Stores, Inc., Civ. No. 011763 (JRT/RLE), 2003 WL 22075763, at *7 (D.

Minn. Aug. 22, 2003)

    AT&T does not allow employees with 25 years of service to use the

unlimited personal illness benefit for family members as contemplated by the

Act.  (Smith Decl. ¶ 8.)  AT&T takes the position that the unlimited personal

illness benefit does not "accrue" as defined by the Act—it is a salary continuation

benefit by which the employee's pay will continue for the time they are absent

for their personal illness, and there is no cap or limit to the amount of paid time

off for personal illness.  (Id.)

### 4.    The 2001 Proceeding

In 2001, this Court heard a similar case involving the same Act and predecessor CBA, brought by the Union against AT&T, seeking to enforce the Act.  See Commc'ns Workers of Am. et al. v. AT&T Corp., Civil File No. 00-1531 (MJD/JSM). The Court denied Plaintiffs' motion to remand on the basis that a claim arising under Minn. Stat. § 181.9413 was preempted by Section 301 of the Labor Management Relations Act of 1947.  (Id. Order dated February 13, 2001 [Doc. No. 27].)

> In this case, the state law claim derives its power from the rights and obligations established by the contract. The state statute in question, which allows an employee to use personal sick leave in order to be paid while taking time off to care for a sick child, only applies in those situations where the employment contract itself already allows for such personal sick leave. Without the terms of the contract which grant those benefits, the state law has no effect. Because the basis for Plaintiff's complaint is dependent upon a right established by a clause in the collective bargaining agreement, the state law claim is therefore preempted by § 301 of the LMRA.

(Id., at 5).

The Court later granted AT&T's motion for summary judgment.  (Id. Memorandum and Order dated December 12, 2001 [Doc. No. 45].)

### 5.   Debra Derke

In 2014, Debra Derke, an AT&T employee with 25 years of service, sought paid time off to care for a member of her family.  (Smith Decl.¶ 9.)  AT&T let Derke take the time off, but did not allow her to use the unlimited paid personal illness benefit (i.e., she was not paid).  (Id.)

On or around August 7, 2014, the Union commenced a grievance process under the CBA on behalf of Derke.  (Lerner Decl., Ex. Q.)  The first and second steps of the grievance procedure were denied, but the third step remains pending.  (Lerner Decl., Ex. A.)

### 6.   DOLI's Attempts to Enforce The Act

On March 10, 2014, DOLI informed AT&T that its employment practices may be in violation of the Act, and threatened to take further action if AT&T refused to voluntarily comply with the Act.  (Lerner Decl., Ex. B.)  AT&T learned that the compliance directive was sent in response to a complaint brought by Derke.  (Lerner Decl. Exs. C, M.)  AT&T replied that DOLI's enforcement efforts were preempted under Section 301.  (Lerner Decl., Ex. C.)  Even if not preempted, AT&T denied any violation of the Act on the grounds that Derke's paid sick leave was "available" but not "accrued"—the benefit does not create a

bank of paid sick days that she accrues over any period of time or any particular

number of sick days that vests or she earns.  (Id.)  Because the Act requires that

the leave must be "accrued and available," the personal sick leave provided

under the CBA is not subject to the Act.  (Id.)  The parties proceeded to exchange

additional correspondence regarding AT&T's position on preemption.  (Lerner

Decl., Exs. D-E.)

On June 26, 2014, DOLI issued a "Direction to Comply" with the Act.

(Lerner Decl., Ex. F.)  It explained that if AT&T failed to comply with the Act, its

violation would be considered willful and could be subject to a civil penalty of

$1,000.  (Id.)  The parties exchanged another series of letters detailing their

respective legal positions.  (Lerner Decl., Exs. G, H.)  DOLI then issued a

Demand for the Submission of Records from AT&T, to which AT&T responded.

(Lerner Decl., Exs. I, J.)  AT&T also responded to DOLI's request for

supplemental records.  (Lerner Decl., Exs. K, L.)

On or around September 24, 2014, DOLI issued a Notice of Initial Findings

that AT&T violated the Act with regard to Derke and another AT&T employee,

Sheila Page-Bey, and directed AT&T to pay back benefits to these individuals.

(Lerner Decl., Ex. M.)  In response, AT&T submitted a Request for Informal

Conference.  (Lerner Decl., Ex. N.)

At the Informal Conference, DOLI indicated that if AT&T did not make the

disputed benefit payments, it would issue a compliance order and take further

legal action, but allowed AT&T time to review DOLI's position and provide new

information by December 1, 2014.  (Lerner Decl., ¶ 16.)  AT&T provided

additional information on that date.  (Lerner Decl. Ex., O.)

### 7.   The Compliance Order

On December 2, 2014, DOLI issued a Compliance Order finding that AT&T

willfully violated the Act, and ordered AT&T to pay over $2,000 in back wages

and liquidated damages.  (Lerner Decl. Ex. P ("Compliance Order").)  Under the

terms of the Compliance Order and Minn. Stat. § 177.27, AT&T had fifteen

calendar days from the date that the Compliance Order was served to contest it.

If AT&T contested the Compliance Order, the matter would be set for a contested

case hearing by the Office of Administrative Hearings.  If not timely contested,

the Compliance Order is set to become a final order of the Commissioner.

### B.    Procedural History

AT&T filed a Complaint with this Court on December 1, 2014.  [Doc. No. 1]
The Complaint alleges jurisdiction pursuant to the Declaratory Judgment Act
and Section 301.  (Compl. ¶ 1.)  Count I—Claim for Declaratory Judgment seeks
declaratory judgment that the application of the Act to individuals covered by
the CBA is preempted by Section 301.  It alleges that because DOLI has failed to
recognize its claims are preempted, a controversy exists and AT&T has been
unnecessarily forced to participate and defend against enforcement proceedings.
(Compl. ¶ 41.)  Count II—Claim for Injunctive Relief, seeks to enjoin the DOLI's
enforcement of the Act (including the filing or commencement of any legal action
to enforce the Act with respect to individuals covered by the CBA and the
processing, investigating or adjudicating of any claim under the Act with respect
to individuals covered by the CBA).  (Compl. ¶¶ 45-52.)

On December 12, 2014, AT&T brought a motion for preliminary injunctive
relief.   The parties stipulated to the terms of an Order granting injunctive relief;
the DOLI was enjoined from enforcing the December 2, 2014 Compliance Order
during the pendency of this action. ([Doc. No. 36].)

11

## II.     Standard of Review

Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  <u>Celotex</u>, 477 U.S. at 323.  "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case."  <u>Amini v. City of Minneapolis</u>, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 252 (1986)).

## III.    Section 301 Preemption

Section 301(a) provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  Not only does Section 301 "grant federal courts jurisdiction

over claims asserting breach of collective bargaining agreements" it also

"authorize[s] the development of federal common-law rules of decision, in large

part to assure that agreements to arbitrate grievances would be enforced,

regardless of the vagaries of state law and lingering hostility toward extrajudicial

dispute resolution."  Lividas v. Bradshaw, 512 U.S. 107, 122 (1994).  In addition,

Section 301 "extend[s] beyond suits alleging contract violations." Allis-Chalmers

Corp. v. Lueck, 471 U.S. 202, 209 (1985) (citing Textile Workers v. Lincoln Mills,

353 U.S. 448, 456 (1957)).

> The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract.

Id., 471 U.S. at 211; see also Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399,

405-06 (1988) ("If the resolution of a state-law claim depends on the meaning of a

[CBA], the application of state law (which might lead to inconsistent results since

there could be as many state-law principles as there are states) is preempted and

federal law principles – necessarily uniform throughout the Nation – must be employed to resolve the dispute.").

A state law claim is preempted by Section 301 if the claim is: (1) "'based on' [a] . . .  provision of the CBA[,] meaning that '[t]he CBA provision at issue' actually sets forth the right upon which the claim is based"; or (2) "'dependent upon an analysis' of the relevant CBA,' meaning that the plaintiff's state-law claim requires interpretation of a provision of the CBA." <u>Williams v. Nat'l Football League</u>, 582 F.3d 863, 874 (8th Cir. 2009) (internal citations omitted).

## A.    Applicability of Section 301

It is the position of DOLI that the Court should begin its analysis by determining whether the Act sets a minimum labor standard.  If the Court so finds, the Court should grant it summary judgment as minimum labor standards are applicable to all employers and are not preempted by federal labor law.  <u>See</u> <u>Metropolitan Life Ins. Co. v. Massachusetts</u>, 471 U.S. 724 (1985).

In <u>Metropolitan Life</u>, the Supreme Court held that a mandated insurance benefit under state law as applied to a plan negotiated pursuant to a CBA and subject to the National Labor Relations Act ("NLRA") was not preempted by the

14

preemption principles of the NLRA[1].  Id. at 758.  In so finding, the Court

recognized that while employers and unions may bargain over wages, hours,

working conditions and pensions, there is nothing in the NLRA that expressly

foreclosed state regulatory power with regard to those issues.  Instead, Congress

intended, through the NLRA, to supplement state laws where compatible, and

preempting state law only when it prevents the accomplishment of the purposes

of the NLRA.  The decision in Metropolitan Life is silent as to preemption under

Section 301.  See also Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 5 (1987)

(finding state statute that created a minimum labor standard was not subject to

preemption under the NLRA)

　　　Like the statute at issue in Metropolitan Life, DOLI argues that the Act

adds requirements to an employer's obligations should it decide to provide sick

leave benefits to its employees.  It is thus a minimum labor standard that AT&T

cannot contract around.  To hold otherwise - that is allowing states to establish

minimum labor standards that are applicable to a CBA while simultaneously

---

[1] The two preemption principles at issue in Metropolitan Life were the Garmon rule, which protects the primary jurisdiction of the National Labor Relations Board to determine what kind of conduct is either prohibited or protected by the NLRA, and Machinists preemption, which preempts a state claim aimed at conduct that was neither prohibited nor protected under the NLRA.  Id. 471 U.S. at 748-50.

finding the state's enforcement of those minimum labor standards preempted by Section 301 - would render <u>Metropolitan Life</u> meaningless. The Court disagrees.

Both <u>Metropolitan Life</u> and <u>Coyne</u> are distinguishable from this case because they did not involve claims that were found to be inextricably intertwined with a provision of a collective bargaining agreement. In fact, the Supreme Court has recognized that a state law that created a nonnegotiable right could be preempted by Section 301, where the state law remedy "turned on the interpretation of a collective-bargaining agreement for its application." <u>Lingle</u>, 486 U.S. at 407.

Accordingly, the Court finds that state laws that create a minimum labor standard are subject to Section 301 preemption if the determination of whether the employer has violated such a law requires the Court to interpret the relevant CBA provision. To find otherwise would allow parties to a CBA to side-step those agreements by simply having a different party seek to enforce the law. <u>See</u> <u>Allis-Chalmers</u>, 471 U.S. at 212 (finding Section 301 preempted individual employee's common law tort claims because "any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract."). That

this action involves a state agency seeking to enforce state law rather than a challenge involving the CBA by an employee or union does not change this outcome.  See Nat'l Metalcrafters v. McNeil, 784 F.2d 817, 823 (7th Cir. 1986) (rejecting argument that Section 301 preemption does not apply to state enforcement actions where resolution of state claim requires interpretation of collective bargaining agreement).

**B.     Whether Claim is "Based On" CBA.**

AT&T asks the Court to once again find that a claim under Minn. Stat. § 181.9413 is preempted under Section 301.  AT&T argues that the Act is completely dependent on the rights created by the CBA, because the Act does not create an independent right to paid leave.  Instead, it provides that employers who provide qualifying sick leave benefits must allow employees to use it for family care under certain circumstances.  The right to paid sick leave is only vested by the CBA.  Because the right at issue is dependent on a right created by the CBA, the Act is preempted.

DOLI raises a number of arguments as to why the Court's ruling in the earlier case should not govern the Court's decision in this case, and why the claim that AT&T has violated Minn. Stat. § 181.9413 is not based on the CBA.

The Court need not decide these issues, however, because it is clear that the resolution of any claim that AT&T violated Minn. Stat. § 181.9413 requires an interpretation of provisions of the CBA.

### C.      Whether Resolution of Claim Requires Interpretation of Provision in CBA.

AT&T argues that Section 301 preemption applies because the state law claim requires the interpretation of the CBA's paid personal illness provision. Allis-Chalmers, 471 U.S. at 220 ("[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law.") (internal citation omitted).  As stated in Allis-Chalmers:

> Were state law allowed to determine the meaning intended by the parties in adopting a particular contract phrase or term, all the evils addressed in Lucas Flour would recur.  The parties would be uncertain as to what they were binding themselves to when they agreed to create a right to collect benefits under certain circumstances.  As a result, it would be more difficult to reach agreement, and disputes as to the nature of the agreement would proliferate.  Exclusion of such claims from the ambit of § 301 would stultify the congressional policy of having the administration of collective bargaining contracts accomplished under a uniform body of federal substantive law.

Id. at 211 (citations and quotation marks omitted).

DOLI argues that to determine whether a state law claim requires interpretation of a CBA, the Court must look at what DOLI must prove in order to hold AT&T liable under the Act. DOLI asserts to prove a violation of the Act requires proof that the employer provided paid sick leave to employees and that it did not allow its employees to use that sick leave to care for relatives. This can be accomplished by merely consulting the CBA; there is no need to interpret the CBA. DOLI claims that it is the state statute which needs to be interpreted, not the CBA (i.e. what is the meaning of "accrued and available" sick leave or "other salary continuation benefit"). The Court disagrees.

To determine whether the Act is violated, more is required than merely consulting the CBA. Rather, the CBA's paid sick leave provision must be interpreted in light of the statutory definition of a "personal sick leave benefit." A determination must be made as to whether the provision "Pay from and including the first full or partial scheduled day of work not worked due to personal illness" meets the statutory definition of "time accrued and available" under the Act, or whether it should be construed as paid time off that is not "accrued." The same CBA provision must also be interpreted to determine

whether it is a "salary continuation benefit" that is excluded from the statutory definition.

The decision of the Minnesota Supreme Court supports this finding. In Lee v. Fresenius, 741 N.W.2d 117 (Minn. 2007), the plaintiff brought a claim for penalties under Minn. Stat. §181.13, claiming that she was not paid all wages owed upon termination. In determining whether such penalties applied, the court noted that Minnesota law did not provide a substantive right to any paid time off, but that the law permits employers to choose whether to grant employees vacation benefits. Id. 741 N.W.2d at 125-26. The court then held that an employer's liability under Section 181.13 was "wholly contractual" and the terms of the contract required interpretation to determine whether the employee earned any benefits to which Section 181.13 applied. Id. at 126.

As in Lee, the state statute at issue does not provide a substantive right to paid sick leave, and the right to use such leave as set forth in Minn. Stat. § 181.9413 requires a threshold interpretation of the CBA.

In an analogous case, the Seventh Circuit held that Section 301 precluded the Illinois Department of Labor from ordering the employer to pay vacation benefits under Illinois law, where the dispute involved how and when vacation

benefits, provided through a CBA, could be used.  <u>Nat'l Metalcrafters</u>, 784 F.2d at

823.  The court held the determination of whether the contract at issue was so

clear as to make a breach willful was an interpretation of the contract, which

triggered Section 301 preemption.  <u>Id.</u>

As the CBA at issue here covers employees throughout the country,

federal law should be consulted when interpreting the term of the CBA which

provides paid personal illness benefits.  Accordingly, the Court finds that Section

301 preempts the claim that AT&T has violated Minn. Stat. § 181.9413.

**IT IS HEREBY ORDERED:**

1.    Defendants' Motion for Summary Judgment [Doc. No. 48] is

DENIED;

2.    Plaintiff's Motion for Summary Judgment [Doc. No. 44] is

GRANTED as there is no genuine dispute of material fact and, as a matter of law,

the State of Minnesota's enforcement of Minn. Stat. § 181.9413 ("Section

181.9413") is preempted by Section 301 of the Labor Management Relations Act;

and

3.    A permanent injunction is GRANTED pursuant to Fed. R. Civ. P. 65.

Defendants Peterson and Aiken and the Minnesota Department of Labor and

Industry (together "DOLI") are hereby enjoined and prohibited, from the date of

this Order, from:

(a) filing or participating in any legal action against AT&T under

Minn. Stat. § 181.9413 with respect to employees covered by the CBA; and

(b) investigating or adjudicating any claim against AT&T under

Minn. Stat. § 181.9413 with respect to employees covered by the CBA.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  February 19, 2016.

s/ Michael J. Davis
Honorable Michael J. Davis
United States District Court